ACCEPTED
03-15-00540-CR
8225614
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 2:45:26 PM
JEFFREY D. KYLE
CLERK

# IN THE THIRD COURT OF APPEALS
# AT AUSTIN, TEXAS

| | | |
|---|---|---|
| **LARRY DONNELL BOSWELL, JR.** | § | |
| **Appellant** | § | |
| | § | **CAUSE NO. 03-15-00540-CR** |
| **V.** | § | **TRIAL COURT NUMBER 72,904** |
| | § | |
| **THE STATE OF TEXAS** | § | |
| **Appellee** | § | |

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 2:45:26 PM
JEFFREY D. KYLE
Clerk

---

## BRIEF OF APPELLANT

---

### Appealed from the 27th Judicial District Court, Bell County, Texas
### Hon. John Gauntt, presiding

---

**COPELAND LAW FIRM**
**P.O. Box 399**
**Cedar Park, Texas 78613**
**Tel/Fax 512-215-8114**

**Erika Copeland**
**State Bar No. 16075250**
**Attorney for Appellant**

**APPELLANT HEREBY REQUESTS ORAL ARGUMENT**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| **Table of Contents** | *i-vii* |
| **Index of Authorities** | *viii-xii* |
| **1. Identity of Parties and Counsel** | 1 |
| **2. Statement of the Case** | 3 |
| **3. Background** | 3 |
| **4. Statement Regarding Oral Argument** | 8 |
| **5. Issues Presented** | 9 |

**A.    Issue One**
The trial court erred in admitting evidence of prior bad acts over defense counsel's objections under **Texas Rules of Evidence 401, 402, 403 and 404(b)**. Specifically, counsel objected to testimony that Boswell was affiliated with any criminal street gang.

**B.    Issue Two**
The trial court abused its discretion by denying Boswell's motion for new trial based on a ***Brady*** violation when the prosecution failed to disclose a witness' history of reprimands while serving as a police officer.

**C.    Issue Three**
The trial court abused its discretion by denying Boswell's motion for new trial based on a ***Brady*** violation when the prosecution failed to disclose impeachment and bias evidence concerning a State's witness that included evidence of a history of reprimands while the witness served as a police officer.

| **B.    Summary of the Arguments** | 11 |
|---|---|

**TABLE OF CONTENTS, continued**

Page

**7. Issue One-Restated**                                                  **11**

      The trial court erred in admitting evidence of prior bad acts over defense counsel's objections under **Texas Rules of Evidence 401, 402, 403 and 404(b)**. Specifically, counsel objected to testimony that Boswell was affiliated with any criminal street gang.

**(A)** Statement of Pertinent Evidence                                     **11**

**(B)** Applicable Law                                                      **13**

      (1)   At trial, all relevant evidence is admissible unless excepted by the Constitution, statute or other rules.

      (2)  Evidence of other crimes wrongs, or acts is not admissible to prove the character of a person in order to show conformity with the character.

      (3)  Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice.

**(C)** Standard of Review                                                  **15**

      (1)  A trial court's ruling is reviewed for an abuse of discretion.

      (2)  A trial court's ruling will be upheld if within the zone of reasonable disagreement.

Page

**(D)** Argument     15

(1) Evidence of Boswell's gang membership was not relevant.

(a) Gang affiliation evidence had no tendency to make probable the existence of any fact of consequence.

(b) Gang affiliation evidence relevant only where there is no other reason for the defendant to have acted as he did to commit the crime.

(2) Even if relevant, under **Rule 403** the evidence was so prejudicial as to outweigh any probative value of the evidence.

(a) Evidence of gang affiliation was a "distraction" to the jury.

(b) The jury was not equipped to evaluate the probative force of the testimony.

**(E)** Harm     18

(1) Where error occurs in admitting evidence of gang affiliation, reversal is required unless it is determined that the error did not affect Boswell's substantial rights.

(a) Substantial rights are not affected if, after examination of the record as a whole, a reviewing court has a fair assurance that the error did not influence the jury, or had but a slight effect.

(b) A review here indicates the evidence contributed to Boswell's guilty verdict.

(1) The State was the source of the error when it introduced irrelevant evidence of character conformity.

(2) The State emphasized Boswell's gang affiliation in closing arguments.

(3) Every witness for the State spoke to or about Boswell's gang affiliation.

(4) The State's "gang expert" spent a great deal of time on Boswell's role with a criminal street gang.

(5) In dramatic fashion before the jury, Boswell was ordered to partially disrobe to show what were described as gang tattoos when the same evidence was available in photographs.

(2) Presentation of the offending evidence was calculated to prejudice the jury, and as a result, the evidence likely affected Boswell's substantial rights.

Page

**7. Issue Two-Restated**                                        **20**

The trial court abused its discretion by
denying Boswell's motion for new trial based on
a ***Brady*** violation when the prosecution failed to
disclose a witness' history of reprimands while
serving as a police officer.

**8. Issue Three-Restated**                                      **21**

The trial court abused its discretion by
denying Boswell's motion for new trial based on
a ***Brady*** violation when the prosecution failed to
disclose impeachment and bias evidence
concerning a State's witness that included
evidence of a history of reprimands while the
witness served as a police officer.

**(A)** Statement of Pertinent Evidence

**(B)** Standard of Review – New Trial

(1) A reviewing court reviews a trial
court's ruling on a motion for new trial for
an abuse of discretion.
(2) Trial Court would not abuse its
discretion in granting new trial if the
defendant articulated a valid claim,
produced evidence supporting the claim,
and showed prejudice to his substantial
rights.

**(C)** Applicable Law – ***Brady*** Violation

(1) Due process requires prosecutorial
disclosure of information material to guilt
or innocence that is favorable to the
defendant.

(2)   A *Brady* violation occurs when the State suppresses, even inadvertently, evidence favorable to the defendant.

(3)   The State has a duty to reveal *Brady* material to the defense whether or not the defense requested the information.

**(D)**  Argument

(1)   In Boswell's post-conviction hearing, the authenticity of the records containing impeachment/bias evidence was acknowledged and the records were not furnished to the defense.

(a)   The documents indicated a basis for bias on the witness' part because his testimony at trial, when added to his curriculum vitae, would promote his efforts to land a job with law enforcement.

(2)   The failure to disclose the records was "material" (*i.e.*, prejudicial to Boswell) when viewed in light of other evidence presented at trial.

(a)   The only evidence of Boswell's involvement in the robbery presented at trial came from accomplices who each had a motive to testify favorable for the State.

(b)   The undisclosed records would have undermined the testimony of the one witness who bolstered the testimony of that of the various accomplice witnesses.

(c)   The undisclosed records would have undermined the testimony of a witness who gave information to the jury different in kind from the other State's witnesses.

(1)   Here, the witness' credibility could not be attacked except through the offending evidence.

(2)   The witness was the sole source of much of the evidence about Boswell's gang activity.

**9.**   Prayer                                                                      **33**

**10.**   Certificate of Service and of Compliance With Rule 9   **34**

*7*

# INDEX OF AUTHORITIES

**Authorities**                                                    **Page**

## United States Supreme Court cases

*Brady v. Maryland*                                                **9,20**
    373 U.S. 83, 83 S. Ct. at 1194, 10 L. ED. 2d 215 (1963)

*Davis v. Alaska*                                                  **27**
    415 U.S. 308, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974)

*Giglio v. U.S.*                                                   **23,27**
    405 U.S. 150, 92 S. Ct. 763, 31 L.Ed.2d 104 (1972)

*Kyles v. Whitley*                                                 **22,29**
    514 U.S. 419, 115 S. Ct. 1555, 131 L.Ed.2d 490 (1995)

*Napue v. Illinois*                                                **28**
    360 U.S. 264, 79 S. Ct. 1173, 3 L.Ed.2d 1217 (1959)

*United States v. Bagley*                                          **28,29**
    473 U.S. 667, 105 S. Ct. 3375, 87 L.Ed.2d 481 (1985)

## United States Court of Appeals cases

*Johnson v. Mills*                                                 **30**
    592 F.3d 730 (2010)

## Texas Court of Criminal Appeals cases

**Authorities**

*Gigliobianco v. State*                                            **14,17,**
    210 S.W.3d 637 (Tex. Crim. App. 2006)

*Hammer v. State*                                                  **14**
    296 S.W.3d 555 (Tex. Crim. App. 2009)

# INDEX OF AUTHORITIES, continued

## Texas Court of Criminal Appeals cases, continued

| Authorities | Page |
|---|---|

*Harm v. State*     **24**
183 S.W.3d 403 (Tex. Crim. App. 2006)

*Herndon v. State*     **23,26,**
215 S.W.3d 901 (Tex. Crim. App. 2007)

*Johnson v. State*     **18**
967 S.W.2d 410 (Tex. Crim. App. 1998)

*King v. State*     **17**
953 S.W. 2d 266 (Tex. Crim. App. 1997)

*Little v. State*     **25**
991 S.W.2d 864 (Tex. Crim. App. 1999)

*Martin v. State*     **13,14**
173 S.W. 3d 463 (Tex. Crim. App. 2005)

*Motilla v. State*     **18**
78 S.W.3d 352 (Tex. Crim. App. 2002)

*Macias v. State*     **16**
959 S.W.2d 332 (Tex. App. – Houston [14[th] Dist.] 1997)

*Pena v. State*     **24**
353 S.W.3d 797 (Tex. Crim. App. 2011)

*Solomon v. State*     **18**
49 S.W.3d 356 (Tex. Crim. App. 2001)

*State v. Fury*     **25**
86 S.W.3d 67 (Tex. App. – Houston [1[st] Dist.] 2005,
*pet. ref'd*)

# INDEX OF AUTHORITIES, continued

## Texas Court of Criminal Appeals cases, continued

**Authorities**                                                   **Page**

*State v. Thomas*                                                    **25**
    428 S.W.3d 99 (Tex. Crim. App. 2014)

*Vasquez v. State*                                                  **16**
    67 S.W.3d 229 (Tex. Crim. App. 2002)

*Westbrook v. State*                                               **32**
    29 S.W.3d 103 (Tex. Crim. App. 2000)

## Texas Court of Appeals cases

*Brumfield v. State*                                               **15**
    18 S.W.3d 921 (Tex. App. – Beaumont 2000, *pet. ref'd*)

*In the Matter of C.F.C.*                                          **31**
    1999 WL675440 (Tex. App. – San Antonio, August 31,
    1999 (*not designated for publication*))

*Grant v. State*                                                   **13**
    2015 WL 50254777, at *5
    (Tex. App. – Houston [14th Dist.] Aug. 25, 2015, *pet. ref'd*)

*Montgomery v. State*
    821 S.W.3d 14 (Tex. App. – Dallas 1991)             **14**

*Newton v. State*                                                  **14**
    301 S.W.3d 315 (Tex. App. – Waco 2009, *pet. ref'd*)

*Ojeda v. State*                                                   **16**
    2004 WL2137653 (Tex. App.—El Paso, September 24, 2004,
    (not designated for publication, *pet. ref'd* 2005)

# INDEX OF AUTHORITIES, continued

## Texas Court of Appeals cases, continued

**Authorities**                                                                **Page**

*Tibbs v. State*                                                                    **15**
     125 S.W.3d 84 (Tex. App. – Houston [14th Dist.] 2003,
     *pet. ref'd*)

### Statutes

**TEX. R. APP. PROC. 44(2)(b)**                                               **17**

**TEX. R. APP. P. 21.3, (h)**                                                 **22,23**

**TEX. PENAL CODE §19.03(a)(2), (b)(1)(West 2014)**                            **3,31,32**

**TEX. CODE CRIM. PROC. art. 37.071(1)(West 2014)**                           **3, 9**

**TEX. R. EVID. 401,402,403,404(b)**                                          **9,1,13**

### Periodicals/Legal Journals

Stephen S. Troft                                                                    29

     *Words of Warning for Prosecutors Using*
     *Criminals as Witnesses*, 47 Hastings, I.J. 1391, 1395 (1966)

# IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

| | | |
|---|---|---|
| **LARRY DONNELL BOSWELL, JR.** § | | |
| **Appellant** § | | |
| § | **CAUSE NO. 03-15-00540-CR** | |
| **V.** § | **TRIAL COURT NUMBER 72,904** | |
| § | | |
| **THE STATE OF TEXAS** § | | |
| **Appellee** § | | |

---

## BRIEF OF APPELLANT

---

## TO THE HONORABLE COURT OF APPEALS:

### 1. IDENTITY OF PARTIES AND COUNSEL

**COMES NOW**, Larry Donnell Boswell, Jr., appellant, who would show the Court that interested parties herein are as follows:

**LARRY DONNELL BOSWELL, JR.**, appellant, TDCJ No. 02011634, Michael Unit, 2664 FM 2054, Tennessee Colony, Texas 75886.

**ROBERT D. HARRIS, III** and **ZACHARY BOYD**, trial attorneys for appellant, 404 N. Main St., Belton, Texas, 76513, and P.O. Box 870, Copperas Cove, Texas, 76522, respectively..

**ERIKA COPELAND**, appellate attorney for appellant, P.O. Box 399, Cedar Park, Texas 78613.

**WILLIAM NELSON BARNES** and **BOB ODOM**, Bell County Assistant

District Attorneys, trial and appellate attorneys, respectively, for appellee, the State

of Texas, P.O. Box 540, Belton, Texas 76513.

## IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

LARRY DONNELL BOSWELL, JR.§
     **Appellant** §
      §    **CAUSE NO. 03-15-00540-CR**
**V.** §    **TRIAL COURT NUMBER 72,904**
      §
**THE STATE OF TEXAS** §
     **Appellee** §

## 2. STATEMENT OF THE CASE

On June 11, 2015, a jury convicted Larry Donnell Boswell, Jr. of the capital offense of murder. (R.R. 7, p. 74) and, *see* **TEX. PENAL CODE §19.03(a) (2) (West 2014)** (C.R. 1, p. 77). As the State had not sought the death penalty, the trial court sentenced Mr. Boswell to life in the Texas Department of Criminal Justice's Institutional Division without the possibility of parole. (R.R. 7, p. 75), and *see* **TEX. CODE CRIM. PROC. art. 37.071(1) (West 2014)**. Boswell gave timely notice of appeal, and the trial court certified his right to do so. (C.R. 1, pp. 81, 130).

## 3. BACKGROUND

Paul Sterling testified that he was called to Killeen from Waco for a meeting with other members of the Gangster Disciples (hereafter "G.D.'s). Once there, he met in a home used by the gang as a clubhouse, and there, he testified, he was asked to go "hit a lick" by the G.D.'s "Governor", Larry Boswell, Jr. aka "Word." (R.R.

Cause No. 03-15-00540-CR
*Larry Donnell Boswell, Jr. v. The State of Texas*
Brief of Appellant         3

5, p. 68). Sterling said that he understood "hit a lick" to mean rob someone. Sterling testified that he refused to undertake the task, but Ricky Brandon, aka "Red", "Slim" (Stephen Mitchell Lewis), "Horsehead" (Kevin Lee Stafford) and "D.C." (Danny Carruth) agreed to the task and left the home armed with a pistol and a rifle in Red's white Suburban. (R.R. 5, pp. 69-70). Sterling said that the four were gone thirty to forty minutes and returned to announce that Red had been shot during the robbery. According to the returning robbers, when Red had emerged unexpectedly from a back bedroom of the house being robbed, Slim had panicked and accidentally shot Red. (R.R. 5, p. 73). Slim announced that they had left Red at the scene. By the time Boswell and another member of the gang returned to retrieve Red, Sterling said, the police had already arrived so they returned home without Red's body. (R.R. 5, pp. 74-75).

Jamie Arrington was targeted by the would-be robbers.[1] Arrington testified that sometime after midnight his front door was kicked in, and he, his girlfriend and two daughters were accosted at gun point by four armed men. He testified that they bound him and his family with duct tape and eventually put them in a bathtub while the house was searched for cash. (R.R. 5, pp. 27-29). The robbers threatened

_____

[1] The prosecution suggested in argument that Arrington was targeted because he was known to keep in his home ill-gotten gain that he earned through illegal enterprise. (R.R. 7, p. 70).

Arrington and his fiancee to induce them to disclose where Arrington had hidden his money. (R.R. 5, pp. 32-33). Arrington testified that he heard a gunshot as he and his family lay in the bathtub, and that as the robbers were leaving, they warned him not to follow. Arrington managed to get loose from his bindings, and he ran outside to find that three of the robbers had fled; they had drug the fourth outside his home where he lay dead near his porch from an apparent gunshot wound. (R.R. 5, pp. 34-37).

Terry Kaiser, a homicide detective with the Killeen Police Department, testified that on his arrival at the crime scene he found a man dead from a single gunshot wound to the chest. (R.R. 5, pp. 102-106).[2] Kaiser opined that the physical evidence indicated to him that the man had actually been shot in the house and his body dragged to its last position near Arrington's front porch. (R.R. 5, p. 130). No guns used by the robbers were ever recovered.

Daniel Carruth, aka "D.C.", testified that Boswell (or "Word") had become the G.D.'s "Governor" or leader when Boswell took over that role after the G.D.'s former leader was removed. (R.R. 5, p. 140). On the night of the 16th, Carruth testified, Boswell instructed him and three other gang members to go hit a lick. He

---

[2] Ricky Brandon was later identified as the dead man through fingerprint comparisons against a fingerprint data base of known criminals.

said that he was ordered by Boswell to act as look-out for the other gang members when they stormed into Arrington's house. He said that after they entered the house, the home's occupants were accosted, tied with duct tape and put in the bath tub as the house was searched for Arrington's cash. (R.R. 5, p. 146). Carruth said that during the robbery he heard a gunshot from the back bedroom. When he went to investigate, he saw that Slim had accidentally shot Red when the latter came unexpectedly from a back bedroom. (R.R. 5, p. 147). Carruth testified that he tried to help Slim carry Red from the home back to Red's SUV, but eventually they left his body near the front porch when Red proved too heavy for the two men to carry to the get-away car. (R.R. 5, pp. 148-149). After disclosure of the shooting to Word on their return to the gang's clubhouse, Carruth said that Boswell and another gang member, Beau, returned to the shooting to retrieve Red's body, but by then, it was too late. The police were already on the scene. (R.R. 5, pp. 150-151).

John Bowman, a former police officer and expert on gangs in general and the Gangster Disciples in particular, testified that when Brandon was identified his girlfriend eventually led police to Paul Sterling who was brought in for questioning. Bowman said that he questioned Sterling who, after initially denying any knowledge of the crime, eventually told the police all he knew about the night Red was shot, including who was involved in the planning and execution of the botched robbery.

(R.R. 6, p. 48). Over objection, Bowman also gave detailed testimony about the G.D.'s, their origin, evolution and history as a violent street gang, their corporate structure and the nature and extent of their influence in the state. (R.R. 6, pp. 35, *et. seq.*). Bowman identified Boswell as the gang's leader or "Governor" since the spring of 2012, and he described Boswell's ascent to his leadership role in the gang. (R.R. 6, pp. 58).[3] The trial court had Boswell remove his shirt for the jury, and Bowman presented a detailed explanation for the various tattoos covering Boswell's upper body and arms which Bowman said had detailed meanings to other gang members. (R.R. 6, pp.54-57 and *see* State's Exhibits 41-45). He concluded his testimony by discussing the level of cooperation he had received in his investigation from other members of the G. D.'s.

---

[3] Bowman's testimony was admitted over objection, and it became one of the subjects of Boswell's motion for new trial as well as the subject of issues to follow in this brief. Evidence pertinent to those issues will be discussed in more detail below.

## 4. STATEMENT REGARDING ORAL ARGUMENT

Appellant Counsel believes that oral argument would aid the Court in reaching its decision and, therefore Counsel requests such argument.

# 5. ISSUES PRESENTED

**ISSUE ONE**

The trial court erred in admitting evidence of prior bad acts over defense counsel's objections under **Texas Rules of Evidence 401, 402, 403 and 404(b)**. Specifically, counsel objected to testimony that Boswell was affiliated with any criminal street gang and to any evidence related to any such gang. (R.R. 5, pp. 14-15).

**ISSUE TWO**

The trial court abused its discretion by denying Boswell's motion for new trial based on a ***Brady***[4] violation when the prosecution failed to disclose a witness' history of reprimands while serving as a police officer.

**ISSUE THREE**

The trial court abused its discretion by denying Boswell's motion for new trial based on a ***Brady*** violation when the prosecution failed to disclose impeachment and bias evidence concerning a State's witness that included evidence of a history of reprimands while the witness served as a police officer.

---

[4] ***Brady v. Maryland***, 83 S. Ct. 1194, 10 L.Ed.2d 215, 373 U.S. 83 (1963) hereafter "***Brady.***"

## SUMMARY OF THE ARGUMENTS

The trial court erred in admitting evidence of Boswell's gang affiliation as well as other gang related evidence. The evidence was irrelevant and offered only proof of Boswell's character and that he acted in conformity with that character. The evidence was irrelevant because it had no tendency to make probable the existence of any fact of consequence. There were other reasons beside gang-affiliation for Boswell to have acted as he did to commit the charged crime. Moreover, even if relevant, the probative value of the offending evidence, if any, was substantially outweighed by the danger of unfair prejudice as the jury was not shown to have been equipped necessarily to evaluate the probative force of all the gang related testimony. As a result, there was a clear disparity between its probative value and the danger of unfair prejudice.

Boswell's motion for new trial was predicated in part on ***Brady*** violations. The State, however inadvertently, failed to provide disciplinary records of its "gang expert", a former police officer, who testified extensively about street gangs, their origins and evolution, and particularly Boswell's affiliation and standing within a specific gang. Those disciplinary records would have provided evidence of the witness' bias because his record of participation in other trials as an expert on gangs and gang related subjects was reflected in his curriculum vitae which he used to

promote his efforts to secure another job with law enforcement. The records also offered impeachment evidence because they detailed misstatements of fact he had made to his superiors and thus undermined his veracity as a witness. The evidence was material to Boswell because his testimony was different in kind from other witnesses, there was no other source for impeachment evidence, and his testimony bolstered that of the State's accomplice witnesses.

## 7. ISSUE ONE RESTATED

The trial court erred in admitting evidence of prior bad acts over defense counsel's objections under **Texas Rules of Evidence 401, 402, 403 and 404(b)**. Specifically, counsel objected to testimony that Boswell was affiliated with any criminal street gang. (R.R. 5, pp. 14-15).

STATEMENT OF PERTINENT EVIDENCE

Defense counsel objected to any evidence that Boswell was affiliated with any street gang, as well as to the use of such terms as "gang" or "gang member" in describing him. Counsel complained that such evidence was not relevant and noted that Boswell's indictment before the jury did not allege organized criminal activity. As a result, any alleged gang appellation, affiliation or activity was irrelevant. Moreover, counsel argued that any evidence of that nature would be overwhelmingly prejudicial to Boswell's case and would certainly outweigh any probative value

offered by the offending testimony. (R.R. 5, pp. 14-16). The State countered that Boswell's gang affiliation was admissible "to show motive, opportunity, intent, plan, preparation, knowledge, identity, absence of mistake or accident, or other enumerated causes." In fact, the State urged, Boswell's gang affiliation was "part of what made him a party to this offense…", and further, that Boswell's gang affiliation was how one of the State's witnesses "knows the defendant so identity comes into play as well." (R.R. 5, p. 16).

The trial court denied Boswell's motion to exclude evidence of Boswell's gang affiliation. (R.R. 5, p. 18). As a result, the jury heard extensive testimony in the guilt/innocence phase of the trial as detailed above; including testimony as noted that Boswell was not only a member of the Gangster Disciples, but that he was, in fact, its leader or "Governor" and the one who had ordered the robbery the subject of this offense. *See*, *e.g.*, testimony of: Paul Sterling at R.R. 5, pp. 63, 68, 79-80; Daniel Carruth at R.R. 5, pp. 140-144, 157. The evidence also included, again as the result of an order from the trial court that Boswell remove his shirt before the jury, a description and explanation by the State's gang "expert", John Bowman, of Boswell's various tattoos. (R.R. 6, pp. 26 *et. seq.*, and, specifically, at pp. 41, 54, and 58, as well as State's Exhibits 41-45 (photos of Boswell's tattoos).

APPLICABLE LAW

At trial, all relevant evidence is admissible unless otherwise excepted by the Constitution, statute, or other rules. **TEX. R. EVID. 402**. "Relevant evidence" is defined as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." **TEX. R. EVID. 401**.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character. **TEX. R. EVID. 404(b)**. However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ***Martin v. State***, 173 S.W. 3d 463, 466 (Tex. Crim. App. 2005) (citing **Rule 404(b)**). Accordingly, a party may introduce extraneous offense evidence if (apart from character conformity) it logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. ***Id***.

Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice. **TEX R. EVID. 403**; and *see*, ***Grant v. State***, No. 14-13-01077-CR WL 50254777, at *5 (Tex. App.

– Houston [14th Dist.] Aug. 25, 2015, *no pet. h.*). In its seminal decision in *Montgomery v. State*, the Court of Criminal Appeals identified four non-exclusive factors to be considered in determining whether evidence should be excluded under **Rule 403**. Those factors were: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and, (4) the proponent's need for the evidence. The Court of Criminal Appeals and the Court of Appeals at Waco reviewed the *Montgomery* decision in *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006)(*footnotes citations omitted*) and *Newton v. State*, 301 S.W.3d 315, 322-23 (Tex. App. – Waco 2009, *pet. ref'd*)(*footnote citations omitted*). In *Gigliobianco*, the Court restated the pertinent factors as follows:

> [A] trial court, when undertaking **Rule 403** analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.
>
> --*Gigliobianco* at 641-42.

**Rule 403,** the Court of Criminal Appeals wrote in ***Newton***, "envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'"

> *--Newton* at 322-23 (quoting ***Hammer v. State***, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)).

STANDARD OF REVIEW

An appellate court reviews a trial court's ruling under the Rules of Evidence for an abuse of discretion. ***Martin v. State***, 173 S.W.3d at 467. If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling as made, a reviewing court must uphold the judgment. ***Id***. A trial court's ruling on the admissibility of evidence will be upheld as long as the ruling was within the zone of reasonable disagreement. ***Id***.

ARGUMENT

Evidence of Boswell's gang membership was not relevant. Here, the evidence of gang affiliation had no tendency to make probable the existence of any fact of consequence. Rather, that evidence was introduced simply in an attempt to connect Boswell to a gang to show his bad character. The State could have presented a clear and understandable case explaining that Boswell participated in, or even authored, the plan to rob Arrington of the latter's ill-gotten gains without interjecting unnecessary information about gangs or Boswell's affiliation with a gang. Had the

State presented its case without the evidence of Boswell's gang relationship, the jury could have undoubtedly followed and understood the sequence of events of the night of the robbery. Moreover, the offending testimony was not same transaction contextual evidence, and thus not admissible as an exception under **Rule 404(b)**. Indeed, as Houston's 14th District Court of Appeals noted, it is only in situations *where there is no other reason* for the defendant to have acted as he did to commit a crime that gang-affiliation evidence should come in during the guilt-innocence stage of a trial, and that was not the case here. *See **Tibbs v. State***, 125 S.W.3d 84 (Tex. App. – Houston [14th Dist.] 2003, *pet. ref'd*), concurring opinion by Justice Anderson, citing ***Brumfield v. State***, 18 S.W.3d 921, 925-26 (Tex. App. – Beaumont 2000, *pet. ref'd*) (*emphasis supplied*). Boswell's gang affiliation was not part of the reason for the murder, or part of the explanation for why the murder occurred as it did. In fact, Brandon's death could have occurred the way it did if a number of people randomly gathered together had simply decided to commit a robbery. In that scenario, Boswell could still be guilty of the offense as an accomplice, and clearly, whether he and the men with whom he associated for the robbery were members of a gang or not would play no role in the offense. *See e.g.*, ***Macias v. State***, 959 S.W.2d 332 (Tex. App. – Houston [14th Dist.] 1997) and *cf.* the unpublished opinion of ***Ojeda v. State***, 2004 WL2137653, (Tex. App.—El Paso, September 24, 2004, *pet.*

*ref'd,* 2005 (*not designated for publication*) (gang-membership evidence was specifically linked to the case and was not used as character conformity evidence) and *Vasquez v. State*, 67 S.W.3d 229 (Tex. Crim. App. 2002).

Even if relevant, under **Rule 403** the evidence of Boswell's gang affiliation was so prejudicial as to outweigh any probative value of the evidence. None of the pertinent factors cited above as dispositive of a **Rule 403** analysis justify the admission of the offending evidence. Rather, the jury's view during trial of a shirtless man disrobed at the order of the trial court to expose his tattoos must have had a substantial impact on the jury. Besides the obvious potential tendency to distract the jury from a sober reflection on the import of such a display (after all, the State had photos of the tattoos it could have shown the jury) the offending evidence suggested a jury decision could rationally be based on the fact that Boswell was a gangster as his tattoos indicated rather than on the sufficiency of evidence adduced to prove his association with the robbery. To bolster that improper basis for the jury's decision, the State presented to the jury an expert whose testimony about Boswell's gang involvement in general and in Killen in particular was the centerpiece of the State's case. All of that evidence allowed the jury the opportunity to give the testimony an inordinate, undue weight when the jury was not equipped to evaluate the probative force of the testimony. *See Gigliobianco*, 210 S.W.3d at

641-42. Considering the trial testimony about gangs in general, testimony about Boswell's relationship to gang activity in particular, as well as the accomplice testimony that Boswell, as the leader of the gang, planned the robbery which resulted in Brandon's death, there is a clear disparity between the danger of unfair prejudice resulting from the complained-of testimony and its probative value. As a result, the trial court abused its discretion by overruling Boswell's **Rule 403** objection to testimony concerning Boswell's alleged gang affiliation.

HARM

Where the trial court erred in admitting evidence of Boswell's gang affiliation, reversal is required, unless after examining the record, it is determined that the error did not affect Boswell's substantial rights. **TEX. 4. APP. PROC. 44(2) (b)**; *King v. State*, 953 S.W. 2d 266, 271 (Tex. Crim. App. 1997). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, a reviewing court has a fair assurance that the error did not influence the jury, or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the

error might be considered in connection with other evidence in the case. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Schutz v. State*, 63 S.W.3d 442, 444-45 (Tex. Crim. App. 2001). The reviewing court should examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010); *Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998).

A review of the evidence here indicates the admission of Boswell's gang affiliation contributed to his guilty verdict. That follows because:

(1) The State was the source of the error when it introduced irrelevant evidence of character conformity;

(2) The State emphasized Boswell's gang affiliation in its closing arguments at nearly every opportunity. *See*, *e.g.*, R.R. 7, pp. 33, 35, 36, 41, 44, 47, 48, 50 and 68;

(3) The State elicited evidence from every one of its witnesses that Boswell was affiliated with or was the leader of the Gangster Disciples. *See* "Background Evidence" and "Statement of Pertinent Evidence" above;

(4) The State's gang expert testified at length about gangs in general and the Gangster Disciples specifically; how the G.D.'s and other gangs operated, with what criminal activities gangs were associated, and how he determined that

Boswell was not only affiliated with but the leader of the G.D's. He also not only described various gang symbols and their meanings to the jury but pointed to tattoos on Boswell's body that he said substantiated his claims after the trial court had Boswell remove his shirt before the jury. *See*, testimony of John Bowman at R.R. 6, pp. 52 through 60 and State's Exhibits 41 through 46.

In sum, a great deal of the State's case against Boswell consisted of evidence concerning Boswell's gang affiliation and not the robbery that resulted in Brandon's death. Presentation of that evidence was calculated to prejudice the jury against Boswell as a bad gangster, and as a result, that evidence likely affected his substantial rights to a fair trial. At the very least, in light of the record as a whole, there can be no fair assessment that the error in admission of the offending evidence did not influence the jury or have but a slight effect on their verdict. *Solomon v. State*, 49 S.W.3d at 365.

## 8.  ISSUE TWO RESTATED

The trial court abused its discretion by denying Boswell's motion for new trial based on a *Brady*[5] violation when the prosecution failed to disclose a witness' history of reprimands while serving as a police officer.

---

[5] *Brady v. Maryland*, 83 S. Ct. 1194, 10 L.Ed.2d 215, 373 U.S. 83 (1963 hereafter "*Brady*)."

## 9.  ISSUE THREE RESTATED

The trial court abused its discretion by denying Boswell's motion for new trial based on a ***Brady*** violation when it was shown that the prosecution failed to disclose the disciplinary history of a former police officer who testified as the State's "gang expert" where the records not only showed the witness's bias but offered substantial basis for impeachment.

STATEMENT OF PERTINENT EVIDENCE

In post-conviction proceedings, Boswell argued that the State had failed to disclose impeachment/bias evidence regarding its "gang expert" witness, John Bowman.  Here, evidence is adduced related to both issues two and three.

Bowman, as noted above, testified extensively about the Gangster Disciples and his findings with regard to Boswell's involvement with and leadership of that gang. (*See*, R.R. 6, pp. 26-79). Bowman's testimony was the last, and arguably most damning, testimony presented by the State. His testimony focused on the gang's activities in Texas and in Killeen in particular, as well as Boswell's alleged influence and power within the gang. He testified that Boswell was not just a member of the gang but, in fact, the "Governor" or boss of the Gangster Disciples in Central Texas. (R.R. 6, p. 58). Bowman testified that "these guys" have been involved in as much criminal activity as any "organization in the history of Killeen."

(R.R. 6, p. 52). He identified and interpreted Boswell's tattoos after the trial court ordered Boswell to remove his shirt before the jury during trial – a not innocuous event when the State had photographs available for the jury's inspection. (R.R. 6, p. 54). Lastly, Bowman testified that he actually aided in the murder investigation itself, and, as a result, he reported on statements he personally took from one of the participants in the robbery, Daniel Carruth ("D.C.") and from the owner of the house where the planning for the robbery allegedly occurred, Timothy Skobel. (R.R. 6, pp. 65-70).

During the hearing on Boswell's motion for new trial, Bowman acknowledged that he had been disciplined by the Killeen Police Department while employed as a sergeant with that department. He testified that he had, in fact, accepted a 56-day unpaid suspension from the Department followed immediately by his retirement in May, 2014, after he admitted to the Department that he had committed at least six violations of the Department's policies. (*See*, Defendant's Motion Exhibit A, C.R. 1, pp. 87, 96-123). That information had not been provided to Boswell's counsel. Neither had Bowman mentioned those disciplinary actions during his testimony in trial. Finally, he acknowledged that the disciplinary actions were omitted from his curriculum vitae (c.v.) provided to the jury when the State presented him as an "expert" on gangs and gang activity. (*See*, R.R. 6, p. 27 (State's Exhibit 36) and

Defendant's Motion (Exhibit B) (C.R. 1, p. 125)).  Boswell argued that the omission of that information from Bowman's c.v. and the State's failure to disclose the information before trial constituted violations of *Brady* and the dictates of its progeny including *Kyles v. Whitley*, 514 U.S. 419 (1995) and *Giglio v. U.S.*, 405 U.S. 150, 92 S. Ct. 763, 31 L.Ed.2d 104 (1972). Had the defense had this information, Boswell's counsel argued, Bowman's credibility could have been impeached and his bias shown to the jury. (R.R. 9, pp. 44-46). However, after hearing testimony and argument of counsel, the trial court denied Boswell's motion for new trial.  (R.R. 9, p. 32).

 APPLICABLE LAW – NEW TRIAL

The trial court must grant the defendant a new trial for any of the reasons articulated in **TEX. R. APP. P. 21.3**, including "when the verdict is contrary to the law and the evidence." **TEX. R .APP. P. 21.3(h)**. "The trial court retains the discretionary power to grant a new trial for any legal reason not listed in **TEX. R. APP. P. 21.3**." *State v. Vigil*, No. 08-13-00273-CR, 2015 WL 2353507, at *3 (Tex. App. – El Paso May 15, 2015, *no pet.*)(*not designated for publication*).  While "[t]he defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial (,) … trial courts do not have the discretion to grant a new trial unless the defendant demonstrates    that

his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon v. State*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007.

STANDARD OF REVIEW— NEW TRIAL

A reviewing court reviews the trial court's denial of a new trial for abuse of discretion. *State v. Herndon*, 215 S.W.3d at 906. In reviewing that denial, "[an appellate court] looks to the grounds pleaded by the movant in the motion and determines whether any of those grounds provide a basis for granting the new trial." *State v. Fury*, 186 S.W.3d 67, 73 (Tex. App. – Houston [1st Dist.] 2005, *pet. ref'd*). A trial judge "cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal." *Herndon*, 215 S.W.3d at 907 [Internal quotation marks omitted]. Instead, even where a defendant urges a new trial on interest of justice grounds, "[a] motion for a new trial, whether for guilt or punishment, requires a valid legal claim." *State v. Thomas*, 428 S.W.3d 99, 107 (Tex. Crim. App. 2014). "To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion." *Herndon*, 215 S.W.3d at 907. While the Court of Criminal Appeals has declined to set bright-line rules for the appellate courts to use in assessing whether the trial court abused its discretion on a ground not enumerated in **TEX. R. APP. P. 21.3**, the Court of

Criminal Appeals has suggested "a trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in **Rule 44.2** of the Texas Rules of Appellate Procedure." *Herndon*, 215 S.W.3d at 909.

APPLICABLE LAW – *BRADY* VIOLATIONS

Due process requires prosecutorial disclosure of information material to guilt or innocence that is favorable to the defendant. *Brady*, 373 U.S. at 87-88, 83 S. Ct. at 1196-97. This rule recognizes the reality that suppression of such evidence would give the State an unfair advantage in "shap(ing) a trial that bears heavily on the defendant(;)" the affirmative disclosure requirements imposed by *Brady* help to avoid "casting the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." *Id*. at 88, 83 S. Ct. at 1197.

"A *Brady* violation occurs when the state suppresses, willfully or inadvertently, evidence favorable to a defendant." *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). A defendant states a proper *Brady* claim where: (1) "the State fails to disclose evidence, regardless of the prosecution's good faith or bad faith;" (2) "the withheld evidence is favorable to him;" (3) "the evidence is

material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different[;]" and (4) "the evidence central to the *Brady* claim [is] admissible in court." ***Pena v. State***, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

"The state's duty to reveal *Brady* material to the defense attaches when the information comes into the state's possession, whether or not the defense requested the information." ***Harm***, 183 S.W.3d at 407. "However, the state is not required to seek out exculpatory evidence independently on appellant's behalf, or furnish appellant with exculpatory or mitigating evidence that is fully accessible to appellant from other sources." ***Id***. "Favorable evidence is any evidence that, if disclosed and used effectively, may make the difference between conviction and acquittal. It includes both exculpatory *and impeachment evidence*." ***Id***. "Exculpatory evidence is testimony or other evidence which tends to justify, excuse or clear the defendant from alleged fault or guilt." ***Id*** at 866-67. "Impeachment evidence is that which is offered to dispute, disparage, deny, or contradict." ***Little v. State***, 991 S.W.2d 864, 867 (Tex. Crim. App. 1999).

ARGUMENT

In Boswell's post-conviction hearing, Bowman admitted to the authenticity of the records which formed the basis of the impeachment/bias evidence even as he

tried to offer mitigation of his actions the subject of those disciplinary records. (R.R. 9, pp. 14-15). It was also established in the hearing that the prosecution, however inadvertently, did not provide the impeachment/bias materials to the defense. (R.R. 9, pp. 40-41).

*Brady* and its progeny such as *Giglio* require the state to disclose all material evidence that could exculpate the defendant, including evidence that could be used to impeach any of the prosecution witnesses or undermine the prosecution's case. Those requirements are so well established that it should have controlled the post-conviction court's ruling on Boswell's motion. Here, the records attached to Boswell's motion for new trial consisted of documents from Bowman's personnel file which, had Boswell receive them prior to trial, he could have used to establish bias on Bowman's part in testifying for the State. Boswell showed, for example, that Bowman's curriculum vitae referenced a number of prior occasions Bowman had testified in gang-related cases; that Bowman's trial testimony in this case would pad that accomplishment, and, most importantly for showing bias, that Bowman was using that curriculum vitae to promote himself within the law enforcement field in efforts to land another job in law enforcement. (R.R. 9, pp. 26-28). With regard to bias, a witness's interest or motive to testify is a critical area of inquiry on cross-examination. *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974).

The records themselves included materials that undermined Bowman's veracity under oath because the disciplinary actions centered on misstatements of fact that he had made to his superiors before his forced resignation. (R.R. 9, pp. 22-23). Concerning impeachment evidence, the United States Supreme Court has noted that, "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L.Ed.2d 1217 (1959).

The key issue here is whether the evidence the subject of Boswell's motion for new trial was "material," (*i.e.*, prejudicial to the defendant) when viewed in light of the other evidence presented at trial. Evidence is deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 672, 105 S. Ct. 3375, 87, 87 L.Ed.2d 481 (1985).  The answer to the materiality issue though is *not* whether the defendant would probably have received a different verdict with the evidence,…"but whether in its absence he

received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L.Ed.2d 490 (1995).

Evidence of Boswell's actual involvement in the robbery came only from accomplices who each had a motive to testify favorably for the State. One witness, Paul Sterling, claimed that Boswell had "ordered" the robbery, but Sterling never made that assertion in the initial statement he gave to police following his arrest. (R. R. 5, p. 82). Further, at time of trial, Sterling had still not been charged with any offense because, according to him, he had refused to participate in the robbery. (R.R. 5, pp. 64, 68). Danny Carruth, a participant in the robbery, also testified that Boswell was the G.D.'s leader who told him to watch by the door as three other robbers entered Arrington's house to rob him. (R.R. 5, pp. 140, 143). Notably, despite his admitted participation in the robbery resulting in Brandon's death, Carruth had not been indicted for capital murder at time of trial, and he admitted that he was "hoping to keep it that way." (R.R. 5, p. 154). The last witness for the State, the icing on the State's cake as it were, was Bowman, the State's gang expert. It was Bowman who provided a detailed analysis of the Gangster Disciples through the years, their corporate structure, their criminal activities, their extensive gang signs and tattoos and, perhaps as damaging evidence as introduced in trial, a description of the G.D.s as the most extensive criminal gang in Killeen's history. (R.R. 6, pp. 35, 58).

Moreover, it was Bowman whose testimony bolstered that of the two gang members who testified and whose interest and bias in favor of the State was shown during cross-examination. Those gang members' testimony was crucial to proof of Boswell's status as leader of the G.D. gang and of his involvement in the planning of the robbery. As a result, any evidence from any source that tended to corroborate or to bolster *their* testimony became crucial to the outcome of the State's case. Finally, Bowman's testimony did not merely serve to provide insight into the gang's activities, it also provided information to the jury different in kind to that of the State's other witnesses because it served to buttress gang members' allegations against Boswell and to undermine the latter's attempts to prove that the witnesses' against him gave self-serving and biased testimony.

In the case of ***Johnson v. Mills***, 592 F.3d 730 (2010), the court noted that jurors often have a negative predisposition toward informants. "Ordinary decent people are predisposed to dislike, distrust, and frequently despise criminals who 'sell out' and become prosecution witnesses. Jurors suspect their motives from the moment they hear about them in a case, and they frequently disregard their testimony altogether as highly untrustworthy and unreliable...." ***Id***. citing Stephen S. Troft, *Words of Warning for Prosecutors Using Criminals as Witnesses*, 47 Hastings, L.J.

1391, 1395 (1966).  In light of that, any evidence supporting such testimony is made the more material.

In a case involving the exclusion of evidence of an officer's disciplinary record, *In the Matter of C.F.C*., the Court of Appeals held that exclusion of such evidence in that case was not error. 1999 WL 675440, Tex. App. – San Antonio, August 31, 1999 (*not designated for publication*). There, defense counsel learned during trial that a police officer had been reprimanded by his department. Counsel argued that the reprimand was admissible to impeach the officer and that the reprimand demonstrated bias and a motive to fabricate portions of the officer's testimony. The appeals court disagreed, but it did so only after it determined that the probative value of the incidents the subject of the reprimand which might establish bias or a motive to fabricate testimony was marginal. It reached that conclusion because the incidents that led to the reprimands had, in fact, occurred *after* the offense the subject of its current trial.  Thus, in that case, the court reasoned that whether the officer had been disciplined for violating police procedures was not relevant to a motive for lying in the case before it. The relevance, the materiality of the impeachment/bias evidence was, he court reasoned, at best only theoretical. **C.F.C., 1999 WL 675440 at \*5**.

In *Saldivar v. State*, 980 S.W.2d 475 (Tex. App. – Houston [14ᵗʰ Dist.] 1998, in a case where defendant discovered an undisclosed conviction for a state's witness, the court of appeals again found that undisclosed evidence of prior convictions was immaterial for impeachment purposes. The appellate court reached that conclusion, however, only after it determined that defendant was able to accomplish his goal to impeach the witness' credibility by using her prior inconsistent statements in lieu of evidence of her convictions.

The Third Court of Appeals, in *DeLeon v. State*, 2015 WL 3454101 (Tex. App. – Austin, May 29, 2015 (petition for discretionary review November 18, 2015 (*not designated for publication*)), found that the relevance for bias in the case before it was "not plainly apparent." There, the court found that the State's motivation for disclosing a recording to law enforcement did not have an effect on the jury's consideration. Apparently, the court reached that conclusion at least in part because, as its opinion noted, appellant was able to challenge the witness' credibility in other ways.

Finally, in *Milke v. Ryan*, 711 F.3d 998 (2013), the United States Ninth Circuit Court of Appeals held that the prosecutor's failure to disclose a key testifying detective's "long history of lies and misconduct" violated appellant's due process rights and reversed and remanded for new trial. In that case, which noted inadvertent

failure to disclose is enough for a ***Brady*** violation (citing ***Kyles*** as well as ***Strickler v. Green***, 527 U.S. 263, 119 S. Ct. 1936, 144 L.Ed.2d 287 (1999), the Court reiterated that it is not necessary to find that the jury would have come out differently. It suffices, the Court wrote, that there is a "reasonable probability of a different result." ***Id***.

Where the State apparently deemed testimony about the Gangster Disciples sufficiently worthwhile that it spent a good deal of time in trial developing the evidence, and where Bowman was the sole source of most of that damning evidence, the materiality of his testimony is even more apparent. As a result, the conclusion cannot be reached beyond a reasonable doubt that the erroneous exclusion of the evidence did not necessarily contribute to Boswell's conviction; rather, the evidentiary suppression of the admitted ***Brady*** material undermines confidence in the outcome of Boswell's trial.

### 13.  PRAYER

**WHEREFORE**, Larry Donnell Boswell, Jr. prays that this honorable court reverse and remand this cause for retrial in accordance with its findings herein and for such other and further relief to which he may justly be entitled.

**COPELAND LAW FIRM**
P.O. Box 399
Cedar Park, TX 78613
Phone: 512.897.8196
Fax: 512.215.8114
Email: ecopeland63@yahoo.com


By: /s/ Erika Copeland
Erika Copeland
State Bar No. 16075250
Attorney for Appellant


## CERTIFICATE OF SERVICE AND OF COMPLIANCE WITH RULE 9

This is to certify that on December 14, 2015, a true and correct copy of the above and foregoing document was served on Bob Odom, Assistant District Attorney of Bell County, P.O. Box 540, Belton, Texas 76513, in accordance with the Texas Rules of Appellate Procedure, and that the Brief of Appellant is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 7202 words.


/s/ Erika Copeland
Erika Copeland